UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK W. HOLM and DANIEL M. HOLM, | ) |
| Plaintiffs, | ) ) ) 11 C 1798 |
| vs. | ) ) Judge Feinerman |
| JASON M. CLARK, SHELDON R. SOBOL, RYAN GASTEIER, ZIAD AIYASH, PATRICIA YODKA, PATRICK OSLAKOVICH, CHRIS HARSEIM, FRED J. EHRMAN, DAVID CRAIG KASHER, and NECIA GUDGEON, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Nick Holm and Daniel Holm brought this suit under 42 U.S.C. §§ 1983, 1985, and 1986 and Illinois law against two groups of defendants. The first group consists of private citizens: Ziad Aiyash, Ryan Gasteier, Necia Gudgeon, Patrick Oslakovich, and Patricia Yodka. The second group consists of public officials: former Grundy County State's Attorney Sheldon Sobol, and Coal City Police Officers Jason M. Clark, Fred J. Ehrman, Chris Harseim, and David Craig Kasher.

Officers Clark, Ehrman, Harseim, and Kasher have moved for summary judgment, and the Holms have moved to supplement their response to the officers' motion. Docs. 50, 59. The Holms' motion is granted. For the following reasons, the officers are granted summary judgment on the federal claims and the state law false arrest and false imprisonment claims. The other state law claims against the officers—which sound in malicious prosecution, assault, battery, and civil conspiracy—are dismissed without prejudice under 28 U.S.C. § 1367(c).

**Background**

The following facts are undisputed, either by the parties' agreement or because the objecting party failed to comply with Local Rule 56.1. All inferences are drawn in favor of Plaintiffs, who are the non-movants. Nick Holm and Daniel Holm are brothers, and Adam Holm is their father. (For ease of exposition, the Holms will be referred to by their first names.)

This case involves two separate episodes. The first commenced on March 16, 2010, when Officer Kasher was dispatched to 485 Marguerite Street for a "fight in progress." Doc. 52 at ¶ 8. Upon arriving at the scene, Kasher observed Adam, Daniel, and Gasteier—all of whom he knew previously—involved in an altercation. Kasher, along with non-party Officer Logan, defused the situation and asked Gasteier what had occurred. Gasteier reported that he had been with Yodka, his girlfriend, when Yodka's daughter Alyssa Garcia called and said that Daniel and Adam were harassing her and calling her a "cock blower." *Id*. at ¶ 10. Gasteier told Kasher that he then went to Lions Park, where Garcia had been, and saw Daniel and Adam in a large black truck traveling on South Mary Street. Gasteier said that as he approached the truck, it started to move in reverse, with Daniel hanging out the window and yelling "pussy" and "you are fucking dead," prompting Gasteier to throw a rock at the truck. *Id*. at ¶ 11. According to Gasteier, the truck stopped on Marguerite Street and Daniel and Adam exited and grabbed a rake and a large stick, respectively, from the truck's bed. Gasteier told Kasher that Daniel and Adam began swinging those items at him.

Officers Kasher and Logan returned to the Coal City Police Department, where they took statements from Gasteier and other witnesses. Oslakovich told Kasher that he observed Daniel and Adam swinging weapons at Gasteier. Non-party Adam Steffes told Kasher that Daniel and Adam were swinging sticks at Gasteier. Garcia said that she was at the park with her friends

when Daniel and Adam began yelling "you blow dick" at them while driving by in a truck. *Id*. at ¶ 18. Logan also took voluntary statements from Daniel, Adam, Gasteier, and two other witnesses. Kasher then prepared an Incident/Investigation Report and forwarded it, along with the statements, to the State's Attorney's Office for further review. (The statements and the Report are admissible for present purposes. *See Woods v. City of Chi.*, 234 F.3d 979, 986-87 (7th Cir. 2000) (criminal complaint, arrest report, and statements made by a complaining witness are admissible to show whether a reasonable officer in the arresting officer's position had probable cause to believe a crime had been committed).)

On April 20, 2010, Officer Ehrman swore out a criminal complaint against Daniel, charging him with aggravated assault in violation of 720 ILCS 5/12-2(a)(1) (amended 2011) and disorderly conduct in violation of 720 ILCS 5/26-1(a)(1). The criminal charges were based on Ehrman's review of Officer Kasher's Incident/Investigation Report. Ehrman also consulted with an Assistant State's Attorney, who advised that the Report's allegations established probable cause to charge Daniel with those crimes. The disorderly conduct charge was eventually dismissed, but Daniel was convicted of aggravated assault.

The second episode occurred in May 2010. On May 18, 2010, Yodka went to the Coal City Police Department and told Officer Clark that on May 15, at approximately 2:00 a.m., she returned home from work and found Nick at her apartment door. Yodka told Clark that the apartment's owner had prohibited the Holms from being on the property. Yodka reported that when Nick saw her approaching, he began "yelling and cussing" at her, that she grabbed Nick, and that Daniel then appeared and began kicking her in the legs, ribs, back, and shoulder. Doc. 52 at ¶ 26. Yodka added that Daniel pulled her to the ground by her hair and continued to kick her while Nick attempted to bite her right arm, leaving her with visible bruises. Yodka provided

Clark with a written statement of her allegations. Clark completed an Incident/Investigation Report detailing Yodka's allegations and including photographs of Yodka's injuries, and forwarded the Report to the State's Attorney's Office for review.

On May 19, after reviewing the Report, Officer Harseim swore out criminal complaints against Daniel and Nick, charging them with criminal trespass to residence in violation of 720 ILCS 5/19-4(a)(1) and battery in violation of 720 ILCS 5/12-3(a)(1). Later that day, the Circuit Court of the Thirteenth Judicial Circuit, Grundy County, issued warrants for the arrest of Daniel and Nick on those charges. After the warrants were issued, Harseim spoke to State's Attorney Sobol, who advised him to interview Nick and Daniel to obtain their version of the incident. Harseim served Nick with the arrest warrant, took him into custody, and brought him to the Police Department. Nick declined Harseim's request for an interview and was booked, processed, and released from custody on a $100 cash bond. Doc. 52-5 at ¶ 13.

On May 20, 2010, Officer Kasher arrested Daniel pursuant to the arrest warrant. The criminal charges against Daniel and Nick for the alleged May 15 incident were dismissed because Yodka, the complaining witness, did not appear to testify at trial.

**Discussion**

The Holms allege that Officers Clark, Ehrman, Harseim, and Kasher violated 42 U.S.C. §§ 1983, 1985, and 1986 by conspiring to have them arrested despite the lack of probable cause. Although the Holms do not explicitly identify the constitutional deprivations giving rise to their federal claims, it appears that they are alleging false arrest, false imprisonment, and malicious prosecution in violation of the Fourth Amendment. The Holms also bring supplemental state law claims for false arrest, false imprisonment, malicious prosecution, assault, battery, and civil conspiracy. As noted above, the officers have moved for summary judgment.

I.      **Section 1983 False Arrest and False Imprisonment Claims**

To prevail on their false arrest and false imprisonment claims, the Holms must show that they were arrested and detained without probable cause. *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010) ("A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause."). "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006)). This is so even for defendants who did not actually effectuate the arrest. *See Stokes v. Bd. of Educ. of City of Chi.*, 599 F.3d 617, 622-26 (7th Cir. 2010) (the existence of probable cause provided an absolute defense to a § 1983 false arrest claim against an elementary school principal for signing criminal complaints against the plaintiffs and causing their arrests).

"Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed … an offense." *Id*. at 622 (omission in original and internal quotation marks omitted). "Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003). Probable cause can generally be based on "[t]he complaint of a single witness or putative victim … unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Ibid*.; *see also McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("Normally, an officer may base a determination of probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth."); *Neiman v. Keane*, 232 F.3d 577, 581 (7th Cir. 2000) ("[c]omplaints from putative

victims about alleged crimes generally establish probable cause"). "[P]olice officers need not exclude every suggestion that a victim is not telling the truth. Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established." *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999). Subsequent evidence of innocence does not invalidate a finding that probable cause existed at the time of arrest. *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). "Prescience is not required of the officers. Instead, courts must focus on the real world situation as known to the officer [when the arrest was made]. The question is whether they had a reasonable belief." *Ibid*.

      A.      **Daniel's Arrest for the March 2010 Episode**

Daniel argues that his arrest for aggravated assault and disorderly conduct arising from the March 2010 episode was not supported by probable cause. "Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law." *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). Illinois law in March 2010 defined aggravated assault as occurring when: (1) a person, without lawful authority, engages in conduct which places another in reasonable apprehension of receiving a battery, and (2) either uses a deadly weapon or commits the assault while on a public way. *See* 720 ILCS 5/12-1(a) (amended 2011), 5/12-2(a)(1) & (9) (current version at 720 ILCS 5/12-2(a) & (c)(1)). Illinois law at the time defined battery as occurring when a person "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (amended 2011). It is undisputed that Gasteier told Officer Kasher that Daniel swung a weapon at Gasteier on Marguerite Street. It also is undisputed that Oslakovich and Steffes told Kasher that they

observed Daniel swinging either a weapon or a stick at Gasteier. These statements were sufficient to create probable cause to believe that Daniel had committed aggravated assault. *See Coleman v. City of Chi.*, 2011 WL 1542129, at *3-4 (N.D. Ill. Apr. 22, 2011).

Because there was probable cause to arrest Daniel for aggravated assault, there is no need to determine whether the arrest was independently justified by probable cause on the disorderly conduct charge. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause"). That said, there was probable cause to arrest Daniel for disorderly conduct. Disorderly conduct occurs under Illinois law when a person knowingly "[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1); *see Gower v. Vercler*, 377 F.3d 661, 670 (7th Cir. 2004) ("the emphasis of the [disorderly conduct] statute is upon the tendency of the conduct to disturb others and to provoke disruptions of public order and upon the unreasonableness of the activity when viewed in the context of the surrounding circumstances") (internal quotation marks omitted). It is undisputed that Garcia told Officer Kasher that Daniel and Adam yelled "you blow dick" at her and her friends while driving by. Garcia's allegation, which the police were entitled to credit, was sufficient to create probable cause to believe that Daniel had committed disorderly conduct. *See Woods*, 234 F.3d at 996 ("we have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause").

In opposing summary judgment, the Holms vehemently deny Gasteier's and Garcia's allegations and accuse them of lying to the police. Whether Garcia or Gasteier lied to the police is irrelevant to whether there was probable cause to arrest. While it is true that Daniel's and

Adam's statements to Officer Logan differed markedly from Gasteier's and Garcia's statements, the officers nonetheless were permitted "to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution." *Askew v. City of Chi.*, 440 F.3d 894, 896 (7th Cir. 2006). Because the undisputed facts of record clearly establish that probable cause existed to believe that Daniel had committed aggravated assault and disorderly conduct, his § 1983 false arrest and false imprisonment claims arising from the March 2010 episode fail as a matter of law.

      B.     **Nick's and Daniel's Arrests for the May 2010 Episode**

Nick's and Daniel's arrests for battery and criminal trespass to residence arising from the May 2010 episode were made pursuant to court-issued arrest warrants. The officers argue that the warrants bar the false arrest and false imprisonment claims. *See Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 483 n.5 (7th Cir. 2011) ("A facially valid warrant generally shields an officer relying in good faith on the warrant from liability for false arrest unless the officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements."). The Holms respond that the warrants' presumptive validity is defeated by the fact that they were charged with trespass to residence even though Yodka did not allege that they entered her apartment.

There is no need to resolve this dispute because, warrants aside, the May 2010 arrests were supported by probable cause that the Holms committed battery. Yodka told Officer Clark that Nick and Daniel physically attacked her. The Holms vociferously protest their innocence, claiming they were at home when the alleged attacks occurred and that "there are many facts that will … prove Yodka was lying to police and the Coal City Police did not investigate and catch

her lying." Doc. 55 at 13. But as with Daniel's arrest for the March 2010 incident, Yodka's allegations were sufficient to cause a prudent person to believe that the Holms committed battery. *See Askew*, 440 F.3d at 896; *Woods*, 234 F.3d at 996; *Spiegel*, 196 F.3d at 724. And because "an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed," *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010), probable cause is not undermined by the possibility that the Holms might have been arrested, in part, for a second crime (trespass upon Yodka's residence) that Yodka's allegations did not support. *See Holmes*, 511 F.3d at 682.

Accordingly, the § 1983 false arrest and false imprisonment claims arising from the May 2010 episode fail as a matter of law. Because none of the arrests violated the Fourth Amendment, it is unnecessary to reach the officers' alternative argument that they are entitled to qualified immunity. *See Jones v. Watson*, 106 F.3d 774, 781 (7th Cir. 1997).

## II. Section 1983 Malicious Prosecution Claim

"Federal courts are rarely the appropriate forum for malicious prosecution claims [because] … individuals do not have a federal right not to be summoned into court and prosecuted without probable cause, under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause." *Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011) (internal quotation marks omitted). Plaintiffs may "bring Section 1983 malicious prosecution suits [only] when the relevant state's law does not provide them with a way to pursue such claims." *Ibid*; *see also Newsom v. McCabe*, 256 F.3d 747, 750-751 (7th Cir. 2001). Because "Illinois law recognizes tort claims for malicious prosecution," the Holms cannot maintain a § 1983 claim for malicious prosecution. *Ray*, 629 F.3d at 664; *see also Nelson v. Vill. of Lisle, Ill.*, 437 F. App'x 490, 496 (7th Cir. 2011).

**III.    Sections 1985 and 1986 Claims**

The Holms do not identify which of § 1985's three subsections they invoke for their claims against the officers, so the court will address all three.

A plaintiff proceeding under § 1985(1) must allege and prove a conspiracy to prevent a *federal* official from discharging his or her official duties. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 283 n.15 (1993) ("[s]ection 1985(1) applies only to officers of the United States"); *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) ("§ 1985(1) applies in cases of interference with federal officials in the performance of their duties. § 1985(1) is not applicable to state officials."); *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981) ("the statute's protections extend exclusively to the benefit of federal officers"); *Baron v. Carson*, 410 F. Supp. 299, 301 (N.D. Ill. 1976) ("On its face, [§] 1985(1) relates solely to federal officers and federal office holders. The dearth of reported case law on this specific issue appears to be no more than a reflection on the clarity of the statutory language, and the inapplicability of [§] 1985(1) to anyone but federal officers."). There is no evidence that any of the defendant officers conspired to prevent a federal officer from discharging his or her official duties, so the Holms have no conceivable § 1985(1) claim.

"Section 1985(2) provides a cause of action to an individual when two or more persons have conspired to deter the individual from attending or testifying in federal court or for the purpose of impeding, hindering, obstructing, or defeating the due course of justice with the intent to deprive the individual of equal protection of the laws." *Dailey v. McKinney*, 2011 WL 761241, at *3 (S.D. Ind. Feb. 24, 2011); *see Copeland v. Nw. Mem'l Hosp.*, 964 F. Supp. 1225, 1236 (N.D. Ill. 1997). Racial or class-based animus is required to establish a § 1985(2) claim where the obstruction of justice is alleged to have occurred in a state court proceeding. *See Kush*

*v. Rutledge*, 460 U.S. 719, 725 (1983); *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994). The same holds true under § 1985(3). *See Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) ("under § 1985(3) … [t]he plaintiff must … show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions") (citation omitted); *Kyle v. Morton High Sch.*, 144 F.3d 448, 457 (7th Cir. 1998). Because the Holms have not suggested, let alone submitted evidence showing, any racial or class-based animus on the part of the officers, they have no viable claim under § 1985(2) or § 1985(3).

The Holms' lack of a viable § 1985 claim against the officers also means that they cannot proceed under § 1986. *See Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 643 (7th Cir. 2006) ("the Court does not have to address the [§ 1986] claim, which to be actionable, requires a violation under § 1985"). Accordingly, the officers are entitled to summary judgment on the §§ 1985 and 1986 claims.

### IV. State Law Claims

The complaint purports to set forth state law claims for false arrest, false imprisonment, malicious prosecution, assault, battery, and civil conspiracy. Having disposed of the Holms' federal claims, and because the parties are not completely diverse, the court must decide under 28 U.S.C. § 1367(c) whether to remand the state law claims to state court. "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims" pursuant to § 1367(c)(3). *Williams v. Rodriguez,* 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

The third exception applies to the state law false arrest and false imprisonment claims. Under Illinois law, a plaintiff claiming false arrest or false imprisonment "ha[s] to show that he was restrained by the defendant and that the defendant acted without probable cause." *Boyd v. City of Chi.*, 880 N.E.2d 1033, 1044 (Ill. App. 2007); *see also Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 317 (Ill. App. 2006) ("To establish either a claim of false arrest or false imprisonment, a plaintiff must show that she was restrained or arrested by the defendant[s], and that the defendant[s] acted without having reasonable grounds to believe that an offense was committed by the plaintiff.") (alteration in original and internal quotation marks omitted); *Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 837 (Ill. App. 2006) ("to succeed on a claim for false imprisonment, a plaintiff must show that he was restrained unreasonably or without probable cause"); *Lappin v. Costello*, 598 N.E.2d 311, 317 (Ill. App. 1992) ("If probable cause existed for the arrest, an action for false arrest cannot lie."). The existence of probable cause therefore is an absolute bar to Illinois state law claims for false arrest and false imprisonment. *See Murdock v. City of Chi.*, 2007 WL 1424604, at *3 (N.D. Ill. May 10, 2007) ("The existence of probable cause is an absolute bar to a § 1983 and a state law claim for false arrest."); *Martel Enters. v. City of Chi.*, 584 N.E.2d 157, 161 (Ill. App. 1991) ("Probable cause is an absolute bar to a claim of false imprisonment"). The determination of whether probable cause exists is the same under Illinois law as it is under federal law. *Compare McBride*, 576 F.3d at 707 ("A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed."), *with Gauger v. Hendle*, 954 N.E.2d 307, 329 (Ill. App. 2011) ("in assessing probable cause to *arrest*, the existence of probable cause depends on the totality of the circumstances at the time of the arrest"). Additionally, "[u]nder both federal and state law, the police may rely upon information from

ordinary citizens to establish probable cause for arrest." *Murdock*, 2007 WL 1424604, at *3. Because, as shown above, there was probable cause for the Holms' various arrests, the state law false arrest and false imprisonment claims fail as a matter of law.

None of the exceptions to the relinquishment of supplemental jurisdiction under § 1367(c)(3) apply to the state law malicious prosecution, assault, battery, and civil conspiracy claims. Because the claims are being dismissed on jurisdictional grounds, Illinois law gives the Holms one year to refile them in state court. *See* 735 ILCS 5/13-217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). Substantial federal judicial resources have not yet been committed to the state law claims. And it is not clearly apparent how the malicious prosecution, assault, battery, and civil conspiracy claims should be resolved.

The officers contend that the malicious prosecution claims can easily be resolved in federal court because lack of probable cause is an element of those claims. *See Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). But the probable cause inquiry for a state law malicious prosecution claim differs from the probable cause inquiry for Fourth Amendment false arrest and false imprisonment claims. "For purposes of [an Illinois state law] malicious prosecution claim, the pertinent time for making the probable cause determination is the time *when the charging document is filed, rather than the time of the arrest*," Holland v. City of Chi.*, 643 F.3d 248, 254 (7th Cir. 2011) (emphasis added), while the pertinent inquiry for federal false arrest and false imprisonment claims turns on the facts and circumstances known "*at the time of the arrest*," *Stokes*, 599 F.3d at 622 (emphasis added). It follows that resolution of the federal claims does not necessarily make "clearly apparent" how the state law malicious prosecution claims should be resolved. *Williams,* 509 F.3d at 404. It therefore is appropriate to dismiss that claim without prejudice. *See Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 571, 573 (7th

Cir. 2001) (affirming a district court's decision to grant summary judgment on a federal claim and some state law claims and to remand the remaining state law claims to state court).

## Conclusion

For the foregoing reasons, the officer defendants are granted summary judgment on the §§ 1983, 1985, and 1986 claims and the state law false arrest and false imprisonment claims. The state law malicious prosecution, assault, battery, and civil conspiracy claims against the officers are dismissed without prejudice under § 1367(c). The Holms are free to bring those claims against the officer defendants in state court.

March 23, 2012

United States District Judge